ALBERT W. RUSSEL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 73423.   Promulgated March 10, 1937.

*Benjamin J. Manley, Esq.*, and *Raymond K. Dykema, Esq.*, for the petitioner.

*Hugh Brewster, Esq.*, for the respondent.

OPINION.

ARUNDELL: This proceeding involves a deficiency in income taxes for 1930 in the amount of $3,532.16. Various errors in the computation of such deficiency were assigned by the petitioner, but upon hearing all except two thereof were withdrawn. The questions in controversy are whether the Commissioner erred in increasing the taxable income of the petitioner by adding thereto (1) the amount of $4,200 claimed to represent salary received by the petitioner during 1930 from the Detroit Bevel Gear Co., and (2) the amount of $18,021.35 claimed to represent a part of petitioner's distributive share from the Sarita Oglebay Russel trust. The facts were stipulated.

The petitioner, formerly a resident of Detroit, Michigan, now resides in Cleveland, Ohio.

During 1930 the petitioner was president and director of the Detroit Bevel Gear Co. and his salary had been fixed by the board of directors early in 1930 at $8,400 per annum, which amount was paid to him in monthly installments during the year. On December 24, 1930, the petitioner discussed the amount of his salary with E. H. Jenks, vice president and director of the company, and with T. R. Navin, its secretary, treasurer, and director. These three men constituted a majority of the board of directors of the company. The petitioner suggested that, in view of the showing which had been made by the company during the year 1930, his salary was excessive and should be reduced to $4,200 per year, which was agreed to by Jenks and Navin. Thereupon, the petitioner delivered to the company his check dated December 23, 1930, payable to the order of the company in the amount of $4,800, which amount included one-half of the salary previously received by him and $600 representing one-half of the amount previously withdrawn by him to cover his traveling expenses. The check was accepted by the company.

The petitioner in his return for 1930 reported salaries received in that year in the aggregate amount of $25,441.88, which included the amount of $4,200 as salary received from the Detroit Bevel Gear Co. The respondent in recomputing the petitioner's tax liability increased the amount of salaries reported by adding thereto $4,200, thus making the salary received by the petitioner from the Detroit Bevel Gear Co. $8,400 instead of $4,200 as reported by the petitioner.

"A readjustment during the year of the amounts of salaries is not unusual in corporation procedure. The amounts incurred are

those finally agreed upon during the year." *Arcadia Amusement Co.*, 14 B. T. A. 1335, 1337; *Stern-Slegman-Prins Co.* v. *Commissioner*, 79 Fed. (2d) 289; *Charles M. Howell, Administrator*, 21 B. T. A. 757; *Verndale Garage, Inc.*, 15 B. T. A. 57, 61; *Guy Fulton*, 11 B. T. A. 641; *Whitney Coal Mining Co.*, 4 B. T. A. 310; *H. B. Hill*, 3 B. T. A. 761; *H. C. Couch*, 1 B. T. A. 103. Since the 1930 salary of the petitioner was reduced by agreement in 1930 and the petitioner in that year returned one-half of the $8,400 to the company, he actually received in the taxable year only $4,200 as salary from the Detroit Bevel Gear Co. The action of the respondent in increasing the petitioner's 1930 salary from $4,200 to $8,400 in 1930 is, therefore, disapproved.

The second issue covers the correctness of respondent's action in increasing petitioner's distributive share of a trust fund.

It appears that on July 6, 1927, Sarita Oglebay Russel, the wife of the petitioner, executed a revocable trust indenture or declaration of trust in writing, made a part of these findings by reference, naming the Central United Bank of Cleveland, Ohio, and certain individuals as trustees, wherein and whereby she created a trust for the benefit of herself, the petitioner, Crispin Oglebay, her cousin, and Courtney Burton, her son, and wherein it was provided, among other things, as follows:

ARTICLE XVIII.

After the decease of the Grantor, the Trust Estate shall be held and disposed of as follows:

(a) The Trustee shall pay all taxes and assessments that may from time to time be levied or imposed upon the principal or income of said Trust Estate, including any inheritance, succession and estate taxes that may be levied or assessed in respect of the Trust Estate or any part thereof, and all proper expenses and obligations incurred by the Trustees in respect to the Trust Estate, and also compensation of the Trustees at the rate hereinafter provided.

(b) Subject to the payments in this Article above provided for, and subject to the termination of this Trust as hereinafter provided, from the time of the death of the Grantor, Fifteen Per Cent. (15%) of the net income of the Trust Estate shall be paid to Albert W. Russel, husband of the Grantor, in monthly installments, so long as he shall live, * * *

Upon execution of the trust indenture Sarita Oglebay Russel transferred to the trustees named 5,000 shares of no par value capital stock of the E. W. Oglebay Co., a corporation. The trustees named in the trust indenture accepted the trust thereby created and at all times thereafter acted as trustees and performed the duties and obligations imposed upon them as such.

Sarita Oglebay Russel died July 10, 1930, without having revoked the trust indenture and while it was in full force and effect.

On November 6, 1930, the Probate Court of Cuyahoga County, Ohio, in a proceeding had in the estate of Sarita Oglebay Russel

for the determination of inheritance tax determined the "values of the successions in said estate, the amounts of the exemptions, and the amounts of the taxes in which the successions are liable." Accordingly, there was assessed for and in behalf of the State of Ohio against the estate of Sarita Oglebay Russel, deceased, a tax in the aggregate amount of $149,633.22, of which $19,043.78 was assessed on the values of 15 successions passing by virtue of the will of Sarita Oglebay Russel, deceased. The remaining $130,589.44 was assessed on the values of the successions passing by virtue of the trust indenture, which was subject to a discount of 8 percent for prompt payment, as follows:

|  | Albert W. Russel | Crispin Oglebay | Courtney Burton | Total |
| --- | --- | --- | --- | --- |
| Value of succession | $238,564.00 | $244,780.00 | $2,660,097.00 |  |
| Exemption | 3,500.00 | None | 5,000.00 |  |
| Rate of tax | 1,2,3, and 4% | 7,8,9, and 10% | 1,2,3, and 4% |  |
| Aggregate amount of tax | $6,257.56 | $21,228.00 | $103,103.88 | $130,589.44 |
| Discount | 500.60 | 1,698.24 | 8,248.31 | 10,447.15 |
| Net amount of tax | 5,756.96 | 19,529.76 | 94,855.57 | 120,142.29 |

On November 10, 1930, the trustees paid the net amount of the tax of $120,142.29. In order to make such payment the trustees borrowed $120,142.29 on their demand note from the Central United National Bank of Cleveland, which amount with interest at 5 percent was repaid on December 26, 1930, from income of the trust. During the period from July 10 to December 31, 1930, the trustees incurred expenses and obligations, which, together with the compensation of the trustees, aggregated $9,367.82, leaving a net amount of $41,989.89 to be distributed to the beneficiaries pursuant to article XVIII of the trust indenture.

The trustees filed a fiduciary information return in which they disclosed a gross income of $171,500, consisting of dividends of the E. W. Oglebay Co., from which were deducted the sum of $120,142.29, being the net amount of taxes paid, and the sum of $9,367.82, other expenses of the trustees, leaving a residue of $41,989.89, of which 15 percent, or $6,298.49, was distributed and paid by the trustees to the petitioner in 1930. This amount was reported by the petitioner in his return for the year 1930 as dividends received.

The respondent in recomputing the tax liability of the petitioner increased the amount of dividends reported by the petitioner by adding thereto 15 percent of the net amount of the taxes of $120,-142.29, or $18,021.35.

The petitioner concedes that under the Revenue Act of 1928 he is not entitled to a deduction for any part of the state inheritance tax paid by the trustees out of the income of the trust in 1930. *Elmon*

*C. Gillette*, 29 B. T. A. 561; affirmed in *Gillette* v. *Commissioner*, 76 Fed. (2d) 6; *Martz* v. *Commissioner*, 82 Fed. (2d) 110.

He, however, advances two arguments, the acceptance of either of which would call for disapproval of the respondent's action in this respect. His first contention is that the tax paid the State of Ohio is allowable to the trustees as a deduction. On this point we think he is wrong. Section 23 (c) of the Revenue Act of 1928 [1] limits the deduction to the decedent's estate. A testamentary trust has been held to be an "estate" within the meaning of this section, *Pennsylvania Co. for Insurances on Lives and Granting Annuities, Executor and Trustee*, 32 B. T. A. 449; *Junius Beebe, Trustee*, 26 B. T. A. 190; affirmed in *Commissioner* v. *Beebe*, 67 Fed. (2d) 662. On the other hand, an *inter vivos* trust, as is here involved, has been held not to be an "estate" within the meaning of this section. *Blanch A. Bagnall*, 35 B. T. A. 1; *Robert P. Scripps*, 33 B. T. A. 963, 967–969.

However, it does not necessarily follow that, because such taxes are not allowable as a deduction to the trustees, they constitute taxable income to the beneficiary. Thus we come to the petitioner's second point. He contends in substance that the amount of trust income taxable to him under section 162 (b) of the Revenue Act of 1928 [2] is to be determined from the provisions of the trust indenture.

"The deductions which a trustee may take in computing its taxable income are controlled by the applicable provisions of the revenue act. In determining the income currently distributable to beneficiaries of a trust, however, we must be guided by the terms of the trust agreements." *Jack M. Franks*, 32 B. T. A. 260, 264. The test of taxability of income to the beneficiaries is "the present right to receive it." *Freuler* v. *Helvering*, 291 U. S. 35. :

It appears from the trust indenture that for the purpose of safeguarding her investments inherited from her father, consisting

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\* \* \* \* \* \*

(c) *Taxes generally.*—Taxes paid or accrued within the taxable year, except—[Exception not material]

\* \* \* \* \* \*

For the purpose of this subsection, estate, inheritance, legacy, and succession taxes accrue on the due date thereof, except as otherwise provided by the law of the jurisdiction imposing such taxes, and shall be allowed as a deduction only to the estate.

[2] SEC. 162. NET INCOME.

The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

\* \* \* \* \* \*

(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries, \* \* \* but the amount so allowed as a deduction shall be included in computing the net income of the beneficiaries whether distributed to them or not. \* \* \*

largely of shares of capital stock of various corporations, the businesses of all of which were more or less interdependent, the grantor caused the E. W. Oglebay Co. to be formed, to which she transferred such capital stock and also other properties in exchange for its capital stock, and that the trust here involved was thereafter created for the purpose of safeguarding the capital stock of the E. W. Oglebay Co. and for the benefit of the grantor during her life and other beneficiaries named therein. The trust indenture expressly provided that after the death of the grantor the trustees should pay certain taxes and expenses, including "inheritance, succession and estate taxes that may be levied or assessed in respect of the Trust Estate or any part thereof," and that, subject to the payment of such taxes and other payments authorized therein to be made by the trustees, 15 percent of the net income of the trust estate should be paid to the petitioner in monthly installments. The petitioner, under the provisions of the trust indenture, had no present right to any part of the trust income required for the payment of such estate and inheritance taxes and could not have compelled the trustees to pay any part of such income to him. It is apparent from the trust indenture that it was the purpose of the trust to safeguard and keep intact the corpus thereof, consisting of the 5,000 shares of the E. W. Oglebay Co., and to use the income and not the corpus for the payment of estate and inheritance taxes. The petitioner was entitled thereunder to only 15 percent of the income remaining after the payment and deduction of such taxes, together with other taxes and expenses authorized therein to be paid out of income.

It is immaterial here whether the Ohio inheritance tax is a transfer tax deductible from the legacy and a charge against the corpus and not against the income or that it has no relation to the income of the trust and is not incidental to the earning of the income, as argued by the respondent. As stated in *Jack M. Franks, supra:*

* * * We do not have the trust before us in this proceeding. The "trust" is a taxpayer within the meaning of Title I of the Revenue Act of 1928, *Anderson* v. *Wilson*, 289 U. S. 20, affirming 60 Fed. (2d) 52, and a separate taxable person from the beneficiary, *Merchants Loan & Trust Co.* v. *Smietanka,* 255 U. S. 509.

*Blanch A. Bagnall, supra,* wherein the Board held that the sole beneficiary of a trust made in contemplation of death is properly taxed on the trust income unreduced by a deduction of a proportionate part of estate and inheritance taxes paid by the trustee, is not controlling here. It appears from the opinion of the Board in that case that all the income of the trust was distributable to the taxpayer and that the evidence therein did not disclose whether the

taxpayer in fact received from the trustee only the remainder of the trust income after the deduction of such taxes, it being impossible therefore to say that she was being taxed upon more than she actually enjoyed. *Restein* v. *Commissioner*, 83 Fed. (2d) 818, is also distinguishable. Therein it appears that by the express terms of the testator's will the inheritance tax on the taxpayer's interest was a charge upon and was paid not out of the income, but out of the principal of the decedent's residuary estate, and that she received the income undiminished by any tax payment.

Nor is the principle applied in *Bergan* v. *Commissioner*, 80 Fed. (2d) 89, controlling here. The court therein held that income tax payments which were made by trustees on income paid by them to the taxpayer as beneficiary, under a trust directing distribution of income to the beneficiary free from such tax, represented "currently distributable income." Such holding is based upon the doctrine that the discharge of an obligation of a taxpayer is considered the equivalent of the receipt of income or that the payment by a third party of a tax obligation constitutes income realized by the party benefited by the payment. The trustees herein did not pay an obligation of the petitioner. The primary obligation for the payment of state inheritance taxes rested upon the trustees and was a general charge upon the trust estate. Sec. 5336, General Code of Ohio;[3] *Keith* v. *Johnson*, 271 U. S. 1, involving New York inheritance tax; *United States* v. *Mitchell*, 271 U. S. 9, involving Texas inheritance tax; *Gillette* v. *Commissioner*, 76 Fed. (2d) 6, involving California inheritance tax. In the latter case, holding that a beneficiary of a trust is not entitled to a deduction of state inheritance taxes which he was forced to pay on his interest transferred to him under a trust deed, the court stated:

* * * Under the inheritance tax laws of all three states [New York, Texas and California] the estate is primarily responsible for the payment of the tax. The judgment against the taxpayer [beneficiary of a trust made in contemplation of death] in the California superior court did not relieve the estate of Lina Gillette [the grantor] from a primary duty to pay the tax. The state only obtained a judgment against the petitioner herein because the trustees had not paid the tax as they were in the first instance bound to do.

---

[3] Sec. 5336.

*Tax a lien upon property.* Such taxes shall be and remain a lien upon the property passing until paid and the successor and the executors or administrators of the general estate of the decedent, and the trustees of such property shall be personally liable for all such taxes, with interest as hereinafter provided, until they shall have been paid as hereinafter directed.

*Duties of executor, administrator or trustee.* Such an administrator, executor or trustee, having in charge or in trust for distribution any property the succession to which is subject to such taxes, shall deduct the taxes therefrom, or collect the same from the person entitled thereto. He shall not deliver, or be compelled to deliver, any specific legacy or property, the succession to which is subject to said taxes, to any person, until he shall have collected the taxes thereon. He may sell so much of the estate of the decedent as will enable him to pay said taxes in like manner as he would be empowered to do for the payment of the debts of the decedent.

It is conceded by the respondent that the Ohio statute covering the inheritance and succession taxes is for all practical purposes the same as that of New York.

We therefore hold that no part of the state inheritance taxes paid by the trustees in the amount of $120,142.29 constituted income taxable to the petitioner, and the action of the respondent in this respect is disapproved.

*Decision will be entered under Rule 50.*