KERMIT JONES AND AROGATE JONES, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 30232–81.     Filed April 4, 1984.

*James W. Newman III, James P. Knight, Jr.,* and *James T. Knight,* for the petitioners.
*Frank Simmons,* for the respondent.

GOFFE, *Judge*: The Commissioner determined a deficiency in petitioners' Federal income tax for the taxable year 1978 in the amount of $932.67. The only issue for decision is whether petitioners must include in income, the value of a fully vested interest in a qualified profit-sharing plan which was relinquished in conjunction with a plea bargaining arrangement.

### FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts and accompanying exhibits are so found and incorporated herein by reference.

Petitioners are married and filed a joint Federal income tax return for 1978 with the Internal Revenue Service in Atlanta,

Ga. Petitioners were legal residents of Florence, Miss., when they filed their petition.

Petitioner Kermit Jones was employed as a loading supervisor for Magna Corp. (hereinafter referred to as Magna) in Rankin County, Miss., during part of 1978.[1] At this time, petitioner had been employed by Magna for 17 years.

Magna maintained a qualified profit-sharing plan[2] for its employees. While employed by Magna during 1978, petitioner was a participant in Magna's profit-sharing plan and had a 100-percent vested interest in employer contributions made on his behalf to the profit-sharing plan as a result of his lengthy employment with Magna. Magna's profit-sharing plan did not include any provisions which would cause a plan participant to forfeit any interests he might have in the plan should he be terminated for disloyalty.

During June 1978, petitioner was arrested at work and terminated by Magna for attempting to embezzle a load of steel rods which were worth about $525. Petitioner was indicted on July 6, 1978, by a grand jury convened in Rankin County, Miss., for attempted embezzlement, a felony under Mississippi law. From this point on, petitioner was represented by counsel at all stages of the criminal proceedings and related matters as discussed herein.

Plea bargaining negotiations commenced shortly thereafter involving petitioner and his counsel, the district attorney and Magna, the victim.[3] Magna had no objection to allowing petitioner to plead guilty to petty larceny, a misdemeanor under Mississippi law, and receive a suspended sentence provided petitioner relinquished his entire interest in the firm's profit-sharing plan. In the absence of such a forfeiture, Magna desired that the petitioner receive and serve a prison sentence and indicated that it would do everything possible to accomplish such. The district attorney was willing to permit the petitioner to plead guilty to petty larceny and receive a suspended sentence along with the imposition of a small fine.

---

[1] Petitioner Arogate Jones is a party herein solely as the result of her filing a joint Federal income tax return with her husband for the year in issue. For convenience, therefore, we will hereafter refer to Kermit Jones as petitioner.

[2] As defined in sec. 401(a). All section references are to the Internal Revenue Code of 1954 as amended and in effect during the year in issue.

[3] The exact nature of Magna's role in this process is unclear. Traditionally, plea bargaining negotiations involve only the prosecutor and the defendant.

After consulting with his attorney, petitioner agreed to surrender his interest in Magna's profit-sharing plan and plead guilty to the misdemeanor charge of petty larceny. On July 14, 1978, petitioner executed a general release to Magna in which he relinquished his interest to any moneys in Magna's profit-sharing plan, and Magna, in turn, agreed not to sue petitioner civilly with respect to his attempted defalcation. Neither Magna nor any of its officers or agents, however, signed this release.

On July 17, 1978, petitioner pled guilty to petty larceny and sentencing was set for July 28, 1978. On the day of sentencing, petitioner and his counsel met with Magna's attorney at the courthouse. Magna's attorney presented petitioner with a $12,260.70 check drawn on Magna's profit-sharing trust's account and payable to petitioner which represented his entire interest in such plan. Without the check's ever leaving the hands of Magna's counsel, petitioner endorsed the check back to Magna in accordance with the general release he had previously executed. On July 28, 1978, petitioner was fined $100 and received a 3-month sentence which was suspended pending his good behavior for the next 5 years.

Petitioners did not include the lump-sum distribution from Magna's profit-sharing plan in income for their taxable year 1978. The Commissioner determined that petitioners received a $12,260.70 lump-sum distribution from the profit-sharing plan during 1978 and recomputed petitioners' income, utilizing the 10-year averaging provisions of section 402(e), which resulted in a deficiency in the amount of $932.67.

OPINION

The issue for decision is whether petitioner must include in income, the value of his fully vested interest in Magna's qualified profit-sharing plan which he relinquished in conjunction with his plea bargaining arrangement. Petitioner asserts that the money is not includable in his income because he never actually or constructively received such funds. Further, should this Court hold that petitioner did, in fact, receive such funds, petitioner asserts that his endorsement of the check back to Magna constitutes a repayment of the money in the year of receipt; hence, there is no net taxable income. Finally, petitioner contends that the release is inadmissible because:

(1) It is void under Mississippi law due to the lack of Magna's signature; and (2) it is voidable under Mississippi law because it was executed under duress and threats of criminal prosecution.

Respondent contends that petitioner realized taxable income because he had an unconditional right to his interest in Magna's profit-sharing plan which he bargained away for valuable consideration, viz, the release in which Magna agreed to not sue petitioner civilly for the attempted defalcation. Respondent, of course, also asserts that the release is admissible.

The parties do not dispute that petitioner, upon his termination of employment with Magna, had a 100-percent vested interest in amounts credited to his account in Magna's profit-sharing plan as the result of his lengthy employment with Magna. Further, Magna's profit-sharing plan did not include any provisions which would cause a plan participant to forfeit any interests he might have in the plan should he be terminated for disloyalty. Petitioner, under the terms of Magna's profit-sharing plan, therefore, had an unconditional right to receive the amounts credited to his account in the profit-sharing plan, and Magna could not lawfully avoid paying such sums to petitioner or his beneficiaries even though he had been terminated for disloyalty. *Winer v. Edison Bros. Stores Pension Plan*, 593 F.2d 307 (8th Cir. 1979); *Vink v. SHV North America Holding Corp.*, 549 F. Supp. 268 (S.D. N.Y. 1982).[4] Hence, throughout the plea bargaining negotiations, petitioner could have lawfully demanded that his fully vested interest in amounts credited to his account in Magna's profit-sharing plan be paid to him or his beneficiaries in accordance with the terms of said plan.

---

[4] In *Winer*, the court held that an employee who was terminated for receiving "kickbacks" from a supplier was still entitled to his pension benefits despite the plan's usage of a "bad-boy" clause, i.e., a forfeiture provision for disloyalty. The court concluded that such clauses were unenforceable with respect to employees subsequent to the effective date of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. sec. 1001 et seq. In *Vink*, the court held that an employer could not refuse to pay pension benefits to a former employee on the ground that he had been convicted of defrauding a subsidiary of his former employer. Although it is unclear whether the plan in *Vink* included a "bad-boy" clause, the court, after an exhaustive review of judicial precedent and the legislative history accompanying the enactment of ERISA, also concluded that "bad-boy" clauses were unenforceable and also refused to imply a "fraud" exception into the nonforfeitability provisions of ERISA.

Petitioner, after consultation with his attorney during the entire plea bargaining process, however, decided that his own self-interest would be best served by his relinquishment of any money that was otherwise lawfully due him under the terms of Magna's profit-sharing plan. He, therefore, executed a release to Magna, surrendering his interest in the plan, and subsequently endorsed back to Magna the profit-sharing trust's lump-sum distribution to him.

Petitioner's contentions that he did not actually or constructively receive the lump-sum distribution ignores the fact that he, upon advice of counsel, endorsed the check representing his entire interest in Magna's profit-sharing plan back to Magna. We have previously held that the unconditional receipt of a check representing an item of income must be included in income in the year of receipt.[5] Petitioner's endorsement of the check clearly constitutes actual receipt of such money so as to require its inclusion in petitioners' gross income under the Internal Revenue Code of 1954, as amended and in effect for the taxable year in issue.[6]

Further, even if we were to accept petitioner's argument that he did not actually or constructively receive such funds, he clearly assigned his unconditional right to receive this money which would still require inclusion in his income. As stated by the Supreme Court in its landmark assignment of income decision, *Helvering v. Horst*, 311 U.S. 112, 116 (1940), in which it held that a donor's gift of interest coupons detached from bonds and delivered to the donee in the year of maturity did not eliminate the donor's realization of interest income:

---

[5] *Harrison v. Commissioner*, T.C. Memo. 1962–172.

[6] Sec. 451(a), which sets forth a general rule with respect to a taxpayer's inclusion of an item in income during a taxable year, provides that:

SEC. 451(a). GENERAL RULE.—The amount of any item of gross income shall be included in the gross income for the taxable year *in which received by the taxpayer*, unless, under the method of accounting used in computing taxable income, such amount is to be properly accounted for as of a different period. [Emphasis added.]

Further, the inclusion in income of distributions from qualified employees' trusts is specifically addressed in sec. 402(a) which provided that:

SEC. 402(a). TAXABILITY OF BENEFICIARY OF EXEMPT TRUST.—

(1) GENERAL RULE.—Except as provided in paragraphs (2) and (4), the amount *actually distributed or made available to any distributee* by any employees' trust described in section 401(a) which is exempt from tax under section 501(a) shall be taxable to him, in the year in which so distributed or made available, under section 72 (relating to annuities). [Emphasis added.]

Underlying the reasoning in these cases is the thought that income is "realized" by the assignor because he, who owns or controls the source of the income, also controls the disposition of that which he could have received himself and diverts the payment from himself to others as the means of procuring the satisfaction of his wants. The taxpayer has equally enjoyed the fruits of his labor or investment and obtained the satisfaction of his desires whether he collects and uses the income to procure those satisfactions, or whether he disposes of his right to collect it as the means of procuring them. * * *

In the instant case, petitioner achieved the requisite "satisfaction of his wants," i.e., a favorable plea bargaining result, by his assignment of his interest in Magna's profit-sharing plan. And even in the absence of the receipt of valuable consideration in return for such a relinquishment,[7] we have held that a taxpayer has realized income when he transfers by gift, the unconditional right to receive future income. *Doyle v. Commissioner*, 3 T.C. 1092 (1944), affd. 147 F.2d 769 (4th Cir. 1945).

Finally, petitioner asserts that if we hold that he did receive the lump-sum distribution, his endorsement of the check back to Magna constitutes a repayment in the year of receipt; hence, there is no net taxable income. In support thereof, petitioner contends that our decisions in *Clark v. Commissioner*, 11 T.C. 672 (1948), *Russel v. Commissioner*, 35 B.T.A. 602 (1937), and *Hill v. Commissioner*, 3 B.T.A. 761 (1926), are controlling. This argument, however, possesses several defects. First, the lump-sum distribution was not repaid to the original distributor in that Magna's profit-sharing trust disbursed the check while petitioner endorsed it back to Magna. The cases cited by petitioner are further distinguishable in that the original *salary* agreements present in each of these cases were found to be subject to modification by the taxpayers and their employers and not absolute.

Further, petitioner cites no specific provision in the Internal Revenue Code of 1954 as amended, for his position, nor could we locate one. Section 61(a) provides, inter alia, that "*Except as otherwise provided in this subtitle*, gross income means all income from whatever source derived, including (but not

---

[7]There is no evidence that Magna ever sued petitioner civilly. There is substantial independent evidence that petitioner relinquished his vested interest in the profit-sharing plan. Accordingly, we need not address the admissibility of the release or its validity under Mississippi law. Petitioner's oral references to this document, however, provide sufficient basis for our finding that it did, in fact, exist.

limited to) the following items: * * * (11) [p]ensions." (Emphasis added.) In the instant case, petitioner does not qualify for any of the traditional bases for excluding items of income which were subsequently repaid. He may not deduct the repayment under section 162 as a business expense because repayment was not a condition of his employment (*Pahl v. Commissioner*, 67 T.C. 286 (1976); *Oswald v. Commissioner*, 49 T.C. 645 (1968)), nor may he avail himself of the provisions of section 1341 because a condition precedent to the utilization of that section is the ability to deduct the item under another provision of the Internal Revenue Code of 1954 as amended. Sec. 1.1341–1(a)(1), Income Tax Regs.; *United States v. Skelly Oil Co.*, 394 U.S. 678, 683 (1969); *Uhlenbrock v. Commissioner*, 67 T.C. 818 (1977); *National Life & Accident Insurance Co. v. United States*, 244 F. Supp. 135 (M.D. Tenn. 1965), affd. 385 F.2d 832 (6th Cir. 1967). Therefore, in the absence of a provision permitting petitioner to exclude his original receipt of the lump-sum distribution from income or to deduct the repayment, he must include the distribution from the profit-sharing plan in income. Sec. 61(a). Accordingly, the Commissioner's determination is sustained.

*Decision will be entered for the respondent.*