T.C. Memo. 2003-187


UNITED STATES TAX COURT


JOHN M. MERRITT AND CAROLYN MERRITT, Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

J.M.A. & ASSOCIATES, P.C., Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 16214-98, 16715-98.          Filed June 30, 2003.


Donald K. Groom, for petitioners.

Denise G. Dengler, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

SWIFT, Judge:  In these consolidated cases, respondent determined deficiencies in Federal income tax, additions to tax, and penalties against petitioners as follows:

John M. and Carolyn Merritt[1]

| Year | Deficiency | Addition to Tax Sec. 6651(a)(1) | Accuracy-Related Penalty Sec. 6662(a) |
|------|-----------|-------------------------------|--------------------------------------|
| 1994 | $ 83,920 | $20,980 | $16,784 |
| 1995 | 108,096 | 5,405 | 21,619 |

J.M.A. & Associates, P.C.

| | | | |
|------|-----------|-------------------------------|--------------------------------------|
| 1994 | $264,558 | $13,228 | $52,912 |
| 1995 | 220,564 | 22,056 | 44,113 |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After settlement of some issues, the primary issues for decision are as follows:

(1) Whether petitioner should include in his 1994 income $129,000 in compensation that he received from his law firm, petitioner J.M.A. & Associates, P.C. (the law firm or the firm), but which $129,000 petitioner returned to the firm later in 1994; and

(2) Whether, for its taxable years ending November 30, 1994, and November 30, 1995, the law firm is entitled to ordinary and necessary business expense deductions for litigation costs it advanced on behalf of its contingent fee clients.

---

[1] Hereinafter references to petitioner in the singular are to petitioner John M. Merritt.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

At the time the petitions were filed, petitioners John M. and Carolyn Merritt resided in, and the principal place of business of the law firm was located in, Oklahoma City, Oklahoma.

During the years in issue, petitioner was a licensed, practicing lawyer who was the founder, president, and sole owner of the law firm, a personal service law corporation which specialized in representing victims in personal injury and product liability cases on a contingent fee basis.

Under the terms of the firm's contingent fee contracts with its clients, the clients agreed to repay the firm litigation costs advanced by the firm in the event a recovery was eventually obtained on behalf of the clients. If no recovery was obtained, the clients were under no obligation to reimburse the law firm litigation costs it had advanced.[2]

---

[2]   More specifically, the firm generally entered into the following two types of contingent fee contracts with its clients under which the clients agreed to repay the firm litigation costs advanced by the firm, in the event a recovery was obtained: (1) From a gross recovery the clients would reimburse the firm for litigation costs advanced by the firm, and then the clients would pay the firm an attorney's fee equal to 50 percent of the net funds remaining; or (2) the clients would pay the firm an attorney's fee equal to 33-1/3 percent of the gross recovery, and the firm would then be reimbursed litigation costs it had advanced out of the clients' remaining 66-2/3 percent share of the gross recovery.

In 1994 and 1995, petitioner received compensation from the firm in the total amounts of $703,800 and $299,925, respectively, denominated by the firm as wages and independent contractor fees as follows:

|  | Petitioner's Compensation | | |
| Year | Wages | Fee Income | Total |
| 1994 | $200,000 | $503,800 | $703,800 |
| 1995 | 200,000 | 99,925 | 299,925 |

In December of 1994, petitioner transferred back to the firm $129,000 which petitioner in 1994 had received from the firm as independent contractor fees. Initially, the firm's bookkeeper classified the returned $129,000 as a reduction of the firm's independent contractor fee expense account. However, in February of 1995, the law firm's bookkeeper, for reasons unclear, reclassified the transfer from petitioner to the law firm of the $129,000 as a reduction in the firm's accounts receivable due from petitioner.

For the law firm's taxable years ending November 30, 1994 and 1995, litigation costs were advanced by the firm relating to contingent fee contracts with its clients in the total amounts of $737,652 and $1,069,275, respectively.

During the years in issue, certain office management tasks and all bookkeeping tasks of the firm were performed by a third party bookkeeper hired by petitioner.

Petitioners' Federal income tax returns were prepared by a certified public accountant (C.P.A.) who was also licensed to practice law, with whom petitioner had a business relationship for more than 20 years.

On July 10, and November 14, 1996, respectively, Mr. and Mrs. Merritt filed late their joint Federal individual income tax returns for 1994 and 1995. On their 1994 return, Mr. and Mrs. Merritt did not include the $129,000 independent contractor fee income that petitioner returned to the law firm in December of 1994.

On July 6, 1998, respondent determined a deficiency in Mr. and Mrs. Merritt's joint Federal income tax liability for 1994 based on, among other things, respondent's inclusion in income of the $129,000 that petitioner received as fee income in 1994 but which petitioner returned to the firm.

Also, for 1994 and 1995, respondent determined against Mr. and Mrs. Merritt additions to tax under section 6651(a)(1) in the amounts of $20,980 and $5,405, respectively, for failure to timely file their Federal income tax returns and accuracy-related penalties under section 6662 in the amounts of $16,784 and $21,619, respectively.

On August 28, 1995, and on October 3, 1996, respectively, the law firm filed late its corporate Federal income tax returns for its taxable years ending November 30, 1994 and 1995. On

those returns, the firm claimed ordinary and necessary business expense deductions for the litigation costs that the firm during those taxable years advanced on behalf of its contingent fee clients in the respective amounts of $705,647 and $629,834 that related to contingent fee client matters not resolved by yearend. On audit, respondent, among other things, disallowed these claimed business expense deductions and determined deficiencies in the firm's income taxes for those years.

Also, for the years ending November 30, 1994 and 1995, respondent determined against the law firm additions to tax under section 6651(a)(1) in the amounts of $13,228 and $22,056, respectively, based on the firm's failure to timely file its tax returns and accuracy-related penalties under section 6662 in the amounts of $52,912 and $44,113, respectively, based on substantial understatements of tax due or, alternatively, negligence or disregard of the rules or regulations.

## OPINION

### Returned Compensation

Section 61(a)(1) provides that "gross income" includes "all income from whatever source derived", including compensation for services and fees.

The Supreme Court has held that gross income includes all "accessions to wealth, clearly realized, and over which the taxpayers have complete dominion", <u>Commissioner v. Glenshaw Glass</u>

Co., 348 U.S. 426, 431 (1955), "without * * * an obligation to repay, and without restriction as to their disposition", James v. United States, 366 U.S. 213, 219 (1961); see also N. Am. Oil Consol. Co. v. Burnet, 286 U.S. 417, 424 (1932).

In Crary v. Commissioner, T.C. Memo. 1970-40, after receiving a paycheck from his employer, the taxpayer on the same day wrote a check to his employer for the same amount and did not include the paycheck in his income. We held that the taxpayer was not permitted to exclude the paycheck from his income. Id.

In Jones v. Commissioner, 82 T.C. 586, 588-590 (1984), a taxpayer relinquished his rights to a profit-sharing plan and withdrew funds from the plan, but then gave the funds back to his employer. We held that the unconditional receipt of the funds resulted in taxable income in the year of receipt. Id. at 590-592.

Respondent argues primarily that because petitioner was not obligated by any agreement to return to the firm the $129,000 in independent contractor fees, the $129,000 constituted income to petitioner when received, and no justification exists for excluding the $129,000 from petitioner's income.

Petitioners, citing Gregory v. Helvering, 293 U.S. 465, 469 (1935), argue that taxpayers are entitled to structure transactions to pay the least Federal income tax (namely, to

reduce their Federal income tax by returning the fees to the firm).

No evidence indicates that when petitioner received the $129,000 he had any restrictions on his use of the $129,000 or that he had any obligation to return the $129,000 to the firm. Petitioner does not qualify for an exclusion from income of the $129,000 that he received from and later returned to his firm in late 1994.  See Commissioner v. Glenshaw Glass Co., supra at 431; Jones v. Commissioner, supra at 591-592; Crary v. Commissioner, supra.

Litigation Costs

Generally, litigation costs advanced or paid by lawyers on behalf of their clients based on contingent fee contracts under which the clients are obligated to repay the litigation costs to the lawyers if the client matters are resolved successfully are to be treated in the year paid as loans to their client, not as ordinary and necessary business expenses.  Canelo v. Commissioner, 53 T.C. 217, 225-226 (1969), affd. per curiam 447 F.2d 484 (9th Cir. 1971); Hearn v. Commissioner, 36 T.C. 672, 674-675 (1961), affd. 309 F.2d 431 (9th Cir. 1962).  Upon resolution of the contingent fee matters, at that time, if the lawyers do not receive repayment of the litigation costs advanced on behalf of their clients, the lawyers are entitled to deduct

the unpaid litigation costs as bad debts.   Canelo v.
Commissioner, supra at 225-226.

Petitioners note that the lawyers involved in Canelo
carefully screened their contingent fee clients and had "good
hopes" of recovery, id. at 224, and petitioners argue that the
facts of that and similar cases are distinguishable (namely,
petitioners claim that the law firm's contingent fee clients were
not screened based on the probability of recovery and that often
any recovery was doubtful).

Even if, as petitioners claim, the law firm's contingent fee
contracts were not screened with regard to the probability of
obtaining a recovery and even if the probability of a recovery
was often doubtful, we conclude that the litigation costs in
dispute are to be treated, in the year advanced by the firm, as
loans, not as ordinary and necessary business expenses of the
firm.

## Section 6651(a)(1) Additions to Tax

For a taxpayer's failure to timely file Federal income tax
returns, section 6651(a)(1) imposes an addition to tax generally
equal to 5 percent of the tax required to be shown as due on the
return for every month the return is late, up to a maximum of 25
percent, unless such failure is due to reasonable cause and not
to willful neglect.

Petitioners claim that they provided complete and timely information to their C.P.A. and that it was the C.P.A. who did not timely file the income tax returns.

Petitioner, a practicing lawyer, was fully capable of making sure that the income tax returns for himself, his wife, and his firm were completed and filed on time. Petitioner's alleged reliance on the C.P.A. is not credible.

Petitioners are liable for the additions to tax under section 6651(a)(1) for the failure to timely file their income tax returns for the years in issue.

Section 6662 Accuracy-Related Penalties

Section 6662 imposes an accuracy-related penalty of 20 percent on underpayments of tax attributable to:  (1) Negligence or to disregard of the rules or the regulations; and (2) substantial understatements of income tax.

Section 6662(d)(1) defines "substantial understatements" as the greater of:  (1) More than 10 percent of the tax required to be shown on the tax return; or (2) $5,000 in the case of an individual, and $10,000 in the case of a corporation.

The section 6662 accuracy-related penalty is not imposed with respect to portions of underpayments of tax for which taxpayers acted with reasonable cause and in good faith.  See sec. 6664(c)(1).  The decision as to whether taxpayers acted with reasonable cause and in good faith depends upon all the pertinent

facts and circumstances.  Sec. 1.6664-4(b)(1), Income Tax Regs. Relevant factors include the taxpayer's efforts to assess his proper tax liability, including the taxpayer's reasonable and good-faith reliance on a tax professional, such as an accountant. Id.

On the facts and testimony before us and in light of the tax adjustments involved herein, we believe that petitioners reasonably relied on the advice of their C.P.A. in the preparation of the tax returns in issue.  Petitioners had reasonable cause for the deficiencies in issue, and petitioners acted in good faith.  Petitioners are not liable for the accuracy-related penalties determined by respondent under section 6662 with respect to the deficiencies in issue herein.

To reflect the foregoing,

Decisions will be entered

under Rule 155.