T.C. Memo. 2013-23

UNITED STATES TAX COURT

HUMPHREY, FARRINGTON & MCCLAIN, P.C., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21153-09.            Filed January 17, 2013.

<u>John C. Aisenbrey</u> and <u>Ben Walter Hobert</u>, for petitioner.

<u>Frances Honecker Holmes</u> and <u>James L. Gessford</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MORRISON, <u>Judge</u>: Respondent (the "IRS") issued a notice of deficiency to petitioner, Humphrey, Farrington & McClain, P.C. ("HFM"), for the year 2005. The notice stated that the IRS had determined an income-tax deficiency of

**[\*2]** $1,278,434 and a section 6662(a) accuracy-related penalty of $255,686.80.[1]

HFM timely filed a petition under section 6213(a) for redetermination of the deficiency and the penalty. We have jurisdiction under section 6214.

After concessions,[2] the remaining issues for decision (and our holdings with respect to those issues) are:

(1) Were the litigation expenses that HFM advanced on behalf of its contingent-fee clients in the nature of loans or deductible as ordinary-and-necessary business expenses? (We hold that the expenses were in the nature of loans.)

(2) Was the IRS's determination that the advanced litigation expenses should be treated as loans a change in method of accounting, and therefore, was a section 481 adjustment proper? (We hold that the determination was a change in method of accounting and that therefore the section 481 adjustment was proper.)

---

[1]All section references are to the Internal Revenue Code as in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

[2]HFM concedes the IRS's adjustments to (1) dues-and-subscriptions expenses and (2) meals-and-entertainment expenses.

**[*3]** (3) Is HFM liable for a section 6662(a) penalty for a substantial understatement of income tax? (We hold that HFM qualifies for the reasonable-cause-and-good-faith exception to the penalty to the extent its understatement is attributable to denial of its claimed deductions for the advanced expenses. Rule 155 computations will determine HFM's exact penalty.)

FINDINGS OF FACT

Some facts have been stipulated, and they are so found. HFM is a law firm that primarily conducts plaintiff-side litigation in areas such as tobacco, toxic-substance exposure, products liability, false advertising, consumer antitrust, securities fraud, medical malpractice, and ERISA benefits. It also has a smaller transactional practice that handles probate, trust-and-estate, business, and real estate matters. HFM is a Missouri corporation that had its principal place of business in Independence, Missouri, when it filed the petition.

HFM is a calendar-year taxpayer. It files its tax returns using the cash method of accounting. It is a qualified personal service corporation under section 448(b)(2).

**[*4]** HFM's Fee Arrangements

HFM initially paid the expenses of pursuing all litigation matters. These expenses included the costs of court-filing fees, court reporters, expert witnesses, depositions, medical records, medical examinations, travel, phone calls, faxes, and photocopying, but not charges for the time of HFM's professionals. We refer to these expenses as advanced expenses. Whether HFM was reimbursed by a client for the advanced expenses depended on the type of fee arrangement, and, in some instances, the result of the litigation.

HFM had four kinds of fee arrangements with its litigation clients: (1) fully reimbursable, (2) net fee, (3) gross fee, and (4) class action. For matters for which HFM had a fully reimbursable fee arrangement, clients paid an hourly or a flat fee and reimbursed the firm for all advanced expenses incurred, regardless of the outcome. All other matters (net-fee, gross-fee, and class-action arrangements) operated on a contingent-fee basis. In all contingent-fee matters, clients paid a legal fee to HFM only if there was a favorable outcome; likewise clients reimbursed the advanced expenses to HFM only if there was a favorable outcome. For matters for which HFM had a net-fee arrangement, clients first used the proceeds to reimburse the advanced expenses; then they paid the firm a set

[*5] percentage of the remaining amount as legal fees.[3] For matters for which HFM had a gross-fee arrangement, clients first paid the firm a set percentage of the proceeds as legal fees; then they reimbursed the firm for advanced expenses out of the remaining amount.[4] In class-action matters, clients paid legal fees and reimbursed advanced expenses according to the terms of any eventual settlement or court award. The terms replicated the fee structure of either a net-fee or a gross-fee arrangement. Generally, each class member contributed an amount proportional to his or her share of the recovery. HFM handled most of its litigation matters on a contingent-fee basis.

HFM's Tax Treatment of Advanced Expenses

For tax purposes, HFM capitalized some of the advanced expenses and deducted the rest. On its tax returns, HFM reported all capitalized expenses as "Other current assets" on Schedule L, Balance Sheets per Books. It did not report

---

[3]If the proceeds were equal to or less than the advanced expenses, HFM might partially forgo the reimbursement of expenses to allow the client to keep some of the proceeds. This situation, however, was rare. Usually the proceeds were sufficient to cover the expenses or there were no proceeds at all.

[4]If the amount remaining after legal fees was equal to or less than the amount of advanced expenses, HFM sometimes partially forwent the reimbursement of expenses to allow the client to keep some of the proceeds. This situation, however, was rare. Usually the amount remaining after legal fees was sufficient to cover the expenses or there were no proceeds in the first place.

[*6] the capitalized expenses as deductions. If a previously capitalized expense was reimbursed (i.e., repaid to it by a client), HFM did not include the reimbursement in income on its tax return. If a previously deducted expense was reimbursed, HFM included the reimbursement in income on its tax return for the year the reimbursement was received.[5]

HFM determined whether to capitalize or deduct the advanced expenses in a given matter through a process that involved an internal classification system of its matters that was related to, but not identical to, the four types of fee arrangements described above. The classification system consisted of four categories: (1) fully reimbursable, (2) net-fee, (3) "gross fee, high risk & difficult", and (4) class action. The first category (fully reimbursable) consisted of all matters for which there was a fully-reimbursable fee arrangement. HFM capitalized the expenses of all matters in the fully-reimbursable category. The second category (net-fee) consisted of all matters involving net-fee arrangements, except for net-fee matters that HFM designated as "high risk" or "difficult". HFM sorted the matters in the net-fee category into two subcategories on the basis of the likelihood that the

---

[5]If an expense was paid and reimbursed in the same year, it is unclear whether HFM deducted the expense and included the reimbursement in income, or simply did not deduct the expense because it was canceled out by the reimbursement. We conclude that this category of expense is not at issue because the parties have not raised a dispute about it.

[*7] matter's expenses would be reimbursed.  If HFM considered the likelihood of reimbursement to be "high", HFM capitalized the expenses for the matter.  If HFM considered the likelihood of reimbursement to be "low", HFM deducted the expenses for the matter.[6]  The third category ("gross fee, high risk & difficult") consisted of all matters involving gross-fee arrangements and the matters involving net-fee arrangements that were thought to be high risk or difficult.  Net-fee matters that were classified as "gross fee, high risk & difficult" were not included in the net-fee category for purposes of HFM's tax reporting.  HFM deducted the expenses of all matters in the "gross fee, high risk & difficult" category.  The fourth category (class action) consisted of all class-action matters.  HFM deducted the expenses of all matters in the class-action category.

The following table summarizes the process by which HFM determined whether to capitalize or deduct the advanced expenses of its matters.

---

[6]The parties have stipulated that most of the expenses advanced in 2005 for matters in the net-fee category were considered by HFM to have a "low" likelihood of reimbursement.  No similar stipulation was made for expenses advanced in years before 2005.

| [*8] HFM's classification system for determining whether to capitalize or deduct advanced expenses | | | |
|---|---|---|---|
| Type of fee arrangement | Additional divisions among cases within a particular fee arrangement | Internal category used by HFM for determining whether to capitalize or deduct advanced expenses | Tax treatment of advanced expenses by HFM (i.e., capitalize or deduct) |
| Fully reimbursable | None | Fully reimbursable | Capitalize |
| Net fee | Not high risk or difficult; "high" likelihood of reimbursement | Net fee | Capitalize |
| | Not high risk or difficult; "low" likelihood of reimbursement | Net fee | Deduct |
| | High risk or difficult | "Gross fee, high risk & difficult" | Deduct |
| Gross fee | None | | |
| Class action | None | Class action | Deduct |

On its 2005 tax return, HFM reported a total of $675,713 of advanced expenses, of which it capitalized $73,220. A small portion of the $73,220 was attributable to matters in the fully-reimbursable category. The rest of the $73,220 was attributable to matters in the net-fee category that were considered to have a "high" likelihood of expense reimbursement. HFM deducted the remaining $602,493 of advanced expenses. The $602,493 was attributable to matters in the "gross fee, high risk & difficult" category, matters in the class-action category, and matters in the net-fee category that were considered to have a "low" likelihood of expense reimbursement.

**[*9]** <u>Notice of Deficiency</u>

The notice of deficiency stated that the IRS had made a section 446 adjustment of $902,851 and a section 481 adjustment of $2,740,161 to HFM's 2005 tax return. The reason stated in the notice of deficiency for the section 446 and 481 adjustments was: "The cash method of accounting you used to keep your books and records for the taxable year 2005 does not clearly reflect income; however, the accrual method of accounting does clearly reflect your income." As we discuss later, this sentence wrongly attributed the section 446 and 481 adjustments as resulting from the imposition of an accrual method of accounting. Furthermore, as a computational matter, the notice of deficiency did not explain how the two adjustments were calculated. The IRS also determined that HFM was liable for a section 6662(a) penalty of $255,686.80 for a substantial understatement of income tax.

In paragraph 7 of the stipulation of facts the parties agree that "The computational basis for the I.R.C. § 481 and I.R.C. § 446 adjustments that are in the Notice of Deficiency is attached hereto as Exhibit 2-J." Exhibit 2-J in turn contains an explanation of both (1) the nature of the section 446 and 481 adjustments, and (2) how the adjustments were computed. As to the nature of the adjustments, Exhibit 2-J clarifies that: (1) overall, the section 446 and 481

**[\*10]** adjustments reflected the IRS's view that HFM should have treated all of its advanced expenses as loans rather than as business expenses, (2) the section 446 adjustment disallowed HFM's deductions for advanced expenses that were incurred in 2005, and (3) the section 481 adjustment effectively disallowed HFM's deductions for advanced expenses that were incurred in all years before 2005 by requiring HFM to include these previously deducted expenses in its 2005 income.[7] As to how the section 446 and 481 adjustments should be computed, Exhibit 2-J--in combination with paragraph 10 of the stipulation--reflects the parties' agreement that the amount of the section 446 adjustment (if sustained) should be $403,808 (not $902,851 as stated in the notice of deficiency) with corresponding reductions to the tax and penalty due. Exhibit 2-J also contains computations for the $2,740,161 section 481 adjustment.

OPINION

I.   <u>The Allocation of the Burden of Proof Is Immaterial</u>.

HFM argues that the IRS bears the burden of proof on the tax treatment of advanced expenses because, HFM claims, the issue is a new matter under Rule

---

[7]Neither the notice of deficiency nor Exhibit 2-J states how many prior years were affected by the sec. 481 adjustment. We are called on to determine the tax consequences of expenses incurred in these prior years even though the computations do not reveal the exact prior years.

**[\*11]** 142(a)(1) and the IRS did not adequately describe the basis for the deficiency under section 7522.  HFM observes that the notice of deficiency wrongly attributed the section 446 and 481 adjustments to changing HFM's method of accounting from the cash method to the accrual method.  The adjustments were actually premised on the determination that HFM should have treated its advanced expenses as loans, not business expenses.

Even if HFM is correct that the IRS bears the burden of proof, our conclusions are based on a preponderance of the evidence.  Thus, the allocation of the burden of proof is immaterial.  See Van Dusen v. Commissioner, 136 T.C. 515, 522 (2011); Martin Ice Cream Co. v. Commissioner, 110 T.C. 189, 210 n.16 (1998).

II.    HFM's Advanced Expenses Are Not Deductible Under Section 162.

The parties disagree on the proper tax treatment of the advanced expenses for which HFM claimed deductions for 2005 and earlier years.  (The advanced expenses that HFM capitalized are not at issue.)  HFM argues that the advanced expenses for which it claimed deductions were not "virtually certain" of being reimbursed and that thus they were deductible as ordinary-and-necessary business expenses under section 162(a) in the year paid.  HFM claims that its treatment of the advanced expenses did not produce undue tax benefits because, when

**[\*12]** previously deducted expenses were reimbursed, it included the reimbursed

expenses in income on its tax return for the year the reimbursements were received.

The IRS argues that the advanced expenses that HFM deducted were in the nature

of loans to its clients and that, therefore, HFM was entitled only to bad-debt

deductions for unreimbursed expenses once cases were closed.[8]  See sec. 166.  We

sustain the IRS's position for the reasons stated below.

    A.    The Parties Dispute the Test for Deductibility.

The parties have differing views on the legal test for determining whether

advanced expenses by law firms are deductible.  HFM argues that advanced

expenses are treated as loans only if there was an expectation of reimbursement.

The IRS argues that advanced expenses are not deductible if the law firm's

contingent-fee arrangements provide for reimbursement upon a favorable litigation

outcome.  The IRS contends that the expectation of reimbursement is irrelevant as

long as the law firm has this contingent right of reimbursement.

---

[8]The IRS advocated this position at trial and on brief.  It has therefore
seemingly conceded that, if the Court agrees that the deductions for advanced
expenses should be disallowed for the years they were incurred, HFM should be
entitled to appropriate bad-debt deductions.  Neither the notice of deficiency nor
Exhibit 2-J states whether the adjustments the IRS seeks incorporate bad-debt
deductions for expenses that were ultimately not reimbursed.  If either party
proposes that further fact findings or legal determinations should be made with
regard to the amounts of bad-debt deductions, that party should make an appropriate
motion before the Rule 155 computations are due.

**[\*13]** This Court has consistently held that advanced litigation expenses are to be treated as loans and are not ordinary and necessary business expenses, even if eventual recovery of the advances is contingent. Hearn v. Commissioner, 36 T.C. 672 (1961), aff'd, 309 F.2d 431 (9th Cir. 1962); Burnett v. Commissioner, 42 T.C. 9 (1964), aff'd in part, remanded in part on other grounds, 356 F.2d 755 (5th Cir. 1966); Canelo v. Commissioner, 53 T.C. 217 (1969), aff'd per curiam, 447 F.2d 484 (9th Cir. 1971); Herrick v. Commissioner, 63 T.C. 562 (1975); Silverton v. Commissioner, T.C. Memo. 1977-198; Merritt v. Commissioner, T.C. Memo. 2003-187. While many of these opinions have discussed the prospects for reimbursement, and some have even cited specific reimbursement rates, we have never found that a low likelihood of reimbursement could justify deductibility. Indeed, in Merritt we concluded that the litigation costs at issue were not deductible "even if the probability of a recovery was often doubtful."

As we explain below, there was a significant expectation of reimbursement for the advanced expenses that HFM deducted. This means that the expenses would not be deductible even if HFM's view about the correct legal test is correct.

**[\*14]** B.　　There Was a Significant Possibility of Reimbursement for the Advanced Expenses That HFM Deducted.

The parties dispute the probability of reimbursement for the advanced expenses that HFM deducted.  HFM claims that there was a low probability of reimbursement for the advanced expenses that it deducted and that it was therefore justified in treating these expenses as business expenses.  The IRS claims that HFM had an extremely successful law practice, that it had measures in place to limit the loss of advanced expenses, and that it has failed to show there was a low probability of reimbursement.

We find that there was a significant possibility of reimbursement for all of the advanced expenses for which HFM claimed deductions.[9]  In reaching this conclusion, we have considered the following evidence:  testimony by McClain and Farrington (two HFM partners), testimony by HFM's accountant, samples of HFM's contingent-fee contracts and engagement letters (only a small sample of these contracts and letters are in the record), various reimbursement rates for HFM's advanced expenses (which we describe in more detail below), and other

---

[9]It is unnecessary (and perhaps impossible) to determine the exact probability that the advanced expenses for which HFM claimed deductions would be reimbursed; we find the probability was at least 50% for all these expenses.

**[*15]** data regarding reimbursements for various sets of cases (which we describe infra note 10).

HFM conducted preliminary investigations of clients and carefully selected the cases it would pursue. It also consistently reevaluated ongoing cases and reserved the right to withdraw if it felt it could no longer pursue a case.

That it may have taken HFM a long time to recover its expenses is not dispositive. The relevant question is the possibility of reimbursement, not how long reimbursement was expected to take.

The reimbursement rates for HFM's advanced expenses fail to demonstrate that the possibility of reimbursement was insignificant. HFM relies on six reimbursement rates in support of its view that it had a low probability of reimbursement when it incurred the expenses:[10]

(1) For cases in the net-fee internal category HFM recovered 48.1% of expenses that (a) were incurred by HFM on or before December 31,

---

[10]Besides the six reimbursement rates, which are stipulated (or otherwise agreed on) by the parties, there is some other data in the record regarding reimbursements for various sets of cases. For some cases information on "cost balances" is provided, but the record does not explain how the "cost balances" were computed. For some cases a reimbursement rate can be derived from the data, but the reimbursement rates so derived are the same as the rates in the stipulation.

**[\*16]** 2003, and (b) the recovery or nonrecovery of which was resolved during the 2004 year.

(2)     For cases in the net-fee internal category HFM recovered 99.9% of expenses that (a) were incurred by HFM on or before December 31, 2004, and (b) the recovery or nonrecovery of which was resolved during the 2005 year.

(3)     For cases in the "gross fee, high risk & difficult" internal category HFM recovered 36.5% of expenses that (a) were incurred by HFM on or before December 31, 2005, and (b) the recovery or nonrecovery of which was resolved on or before December 31, 2005.

(4)     For tobacco cases in the "gross fee, high risk & difficult" internal category HFM recovered 42.4% of expenses that (a) were incurred by HFM on or before December 31, 2007, and (b) the recovery or nonrecovery of which was resolved on or before December 31, 2007.

(5)     For tobacco cases in the "gross fee, high risk & difficult" internal category HFM recovered 50.8% of expenses that (a) were incurred by HFM on or before December 31, 2009, and (b) the recovery or nonrecovery of which was resolved on or before December 31, 2009.

**[\*17]** (6)    For cases in the class-action internal category HFM recovered 55.8% of expenses that (a) were incurred by HFM on or before December 31, 2005, and (b) the recovery or nonrecovery of which was resolved on or before December 31, 2005.[11]

For cases in the net-fee category the reimbursement rate for cases closed in 2004 is 48.1%, but the reimbursement rate for cases closed in 2005 is 99.9%.[12] The relatively low 2004 percentage is insufficient to convince us that there was an insignificant possibility of reimbursement of the expenses in the net-fee category. The 2005 percentage is high, which suggests that the 2004 percentage cannot be relied on as an indicator that there was an insignificant possibility of reimbursement of the expenses in the net-fee category.

Similarly, the 36.5% reimbursement rate for all "gross fee, high risk & difficult" cases is not dispositive of the likelihood of expense reimbursement in

---

[11]The parties stipulated that the rate was 39.4%, but in HFM's proposed findings of fact, HFM proposed that the rate was 55.8%, and the IRS did not object.

[12]These reimbursement rates are based on advanced expenses that were outstanding (i.e., unreimbursed) as of the end of the previous year. Some of HFM's advanced expenses were paid and reimbursed in the same year, but these expenses are not at issue. See supra note 5. It is unclear whether the reimbursement rates are based on all advanced expenses in the net-fee category, or only the advanced expenses that were deducted.

[*18] that category of cases.  The 36.5% reimbursement rate is not as probative as

HFM argues because it is based on HFM's experience in only 11 cases.  There were

11 cases in the "gross fee, high risk & difficult" category that were closed by the

end of 2005.  But HFM had 134 other "gross fee, high risk & difficult" cases

pending at the end of 2005.  The 11 cases that had been closed by the end of 2005

all happened to be tobacco cases, but an additional 31 tobacco cases were pending

at the end of 2005.

The expenses in tobacco cases made up most of the expenses in the "gross

fee, high risk & difficult" category.  The tobacco cases were perhaps the riskiest of

HFM's cases.  But we are convinced, on the basis of HFM's stringent standards

for accepting cases, that there was a significant possibility of reimbursement in the

tobacco cases and in the other cases in the "gross fee, high risk & difficult"

category.  One aspect of litigating the tobacco cases was that the tobacco

defendants almost uniformly refused to settle the cases, thus forcing most

plaintiffs to go to trial (or, as the tobacco companies hoped, to give up their

lawsuits before trial).  Although the tendency against settlement cut off one

avenue of resolving the case favorably, it also provided an incentive to bring suits

that had a relatively high probability of success in court.  Furthermore, the record

shows that HFM had unusual competencies in prevailing over defendants.  For

**[\*19]** example, HFM was a national leader in "popcorn lung disease" litigation, and as of the trial in this case, it was the only firm that had obtained a successful verdict in a "popcorn lung disease" case.

For cases in the class-action category, taking into account the recovery rate in the record and HFM's stringent case-selection methods, we conclude that there was a significant possibility of receiving reimbursement for expenses.

On the basis of the record, we find that there was a significant possibility that the advanced expenses that HFM deducted would be reimbursed. HFM screened its cases and clients, HFM had a decent probability of winning its cases (and thus recovering its advanced expenses), and the reimbursement rates for HFM's advanced expenses fail to show the possibility of reimbursement was insignificant for the advanced expenses that it deducted. The mere fact that HFM received reimbursement for a certain percentage of the advanced expenses (e.g., it received reimbursement for 36.5% of the expenses it advanced in "gross fee, high risk & difficult" cases) does not mean that this percentage was the probability that the expense would be reimbursed at the time the expense was advanced.

**[\*20]** C.  <u>Different Treatment of Advanced Expenses in Class-Action Cases Is</u>
<u>Not Warranted by (1) the Requirement That a Court Approve Expense</u>
<u>Awards or (2) the Initial Uncertainty About the Identities of Class</u>
<u>Members</u>.

In addition to its argument that there was no expectation of reimbursement for

all the advanced expenses that it deducted, HFM argues that its advanced expenses

in class-action cases in particular were deductible because:  (1) expense awards

required court approval, and (2) there was "no identifiable obligor" for the advanced

expenses.[13]  We disagree.

A class action is a lawsuit in which the court authorizes a single person or a

small group of people to represent the interests of a larger group, which is

commonly referred to as a "class".  Black's Law Dictionary 284 (9th ed. 2009).  A

person who sues on behalf of a class is referred to as a "class representative".  <u>See,</u>

<u>e.g.</u>, <u>Wal-Mart Stores, Inc. v. Dukes</u>, __ U.S. __, __, __, 131 S. Ct. 2541, 2550,

2559 (2011); <u>Devlin v. Scardelletti</u>, 536 U.S. 1 (2002).  Generally, a court

authorizes a case to proceed as a class action by issuing an order certifying the case

as a class action.  <u>See, e.g.</u>, Fed. R. Civ. P. 23(c)(1); Mo. R. Civ. P. 52.08(c)(1).[14]

---

[13]We discuss HFM's "no identifiable obligor" argument in more detail <u>infra</u>
p. 25.

[14]We refer to the Federal Rules of Civil Procedure because HFM litigates
many of its class actions in U.S. District Court.  We refer to the Missouri Rules of

(continued...)

**[\*21]** If a case is not certified as a class action, it cannot be pursued as a class action. See, e.g., Fed. R. Civ. P. 23(c)(1); Mo. R. Civ. P. 52.08(c)(1). For a case to be certified as a class action, it must satisfy various requirements under the relevant state or federal procedural rules that ensure the case is suitable for pursuit as a class action. See, e.g., Fed. R. Civ. P. 23(a) and (b); Mo. R. Civ. P. 52.08(a) and (b). Once a court decides to certify a case as a class action, the court generally defines the class, which may be done by adding the class definition to the order certifying the class action or by issuing a separate order.[15] See, e.g., Fed. R. Civ. P. 23(c)(1)(B); Mo. R. Civ. P. 52.08(c)(2)-(4). The court also approves or appoints "class counsel"--a term that refers to the law firm or the attorney(s) that represent the class. See, e.g., Fed. R. Civ. P. 23(g); Mo. R. Civ. P. 52.08(a)(4), (d)(2); Vandyne v. Allied Mortg. Capital Corp., 242 S.W.3d 695, 698 (Mo. 2008).

---

[14](...continued)
Civil Procedure because HFM litigates many of its class actions in the state courts of Missouri.

[15]The definition of a class may take the form of a phrase describing in generic terms the people who qualify as members of the class, rather than a list identifying the members of the class by name. See, e.g., Fed. Paper Bd. Co. v. Commissioner, 90 T.C. 1011, 1014 (1988) ("The District Court defined the class on whose behalf the class action was maintained as 'All persons in the United States (excluding Defendants, their subsidiaries, affiliates, or agents), who purchased folding cartons from any of the Defendants in these actions during the period from January 1, 1960 to December 31, 1974.'" (quoting In re Folding Carton Antitrust Litig., 75 F.R.D. 727, 737-738 (N.D. Ill. 1977)).

**[\*22]** In some types of class actions, the procedural rules require the court to issue a notice to the members of the class who can be identified through reasonable effort; the notice advises these class members of the existence of the class action and of their rights and options under the procedural rules. See, e.g., Fed. R. Civ. P. 23(c)(2)(B); Mo. R. Civ. P. 52.08(c)(2). The notice gives class members the option of requesting exclusion (i.e., "opting out") from the class by a certain date. See, e.g., Fed. R. Civ. P. 23(c)(2)(B)(v) and (vi); Mo. R. Civ. P. 52.08(c)(2). The period within which a class member can request exclusion from the class is commonly referred to as the "opt-out period". See, e.g., Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 606, 608 (1997); In re Int'l House of Pancakes Franchise Litig., 536 F.2d 261, 263 (8th Cir. 1976). In other types of class actions, class members (as a general rule) cannot opt out of the class and are not entitled to receive notice of the class action. See, e.g., Fed. R. Civ. P. 23(c)(2) and (3); Mo. R. Civ. P. 52.08(c)(2) and (3); Wal-Mart Stores, Inc., __ U.S. __, __, 131 S. Ct. at 2558-2559. Class members who do not (or cannot) opt out are generally bound by the terms of a settlement or judgment reached in the case. See, e.g., Fed. R. Civ. P. 23(c)(2)-(3), (e); Mo. R. Civ. P. 52.08(c)(3); Smith v. Bayer Corp., 131 S. Ct. 2368, 2380-2381 (2011); Amchem Prods., Inc. v. Windsor, 521 U.S. at 601-606, 610-611. If the parties decide to settle rather than submit the case to the court for

[*23] judgment, the court must approve the settlement. See, e.g., Fed. R. Civ. P. 23(e); Mo. R. Civ. P. 52.08(e). In a certified class action, the court can award reasonable attorney's fees and expenses that are authorized by law or by agreement of the parties. See, e.g., Fed. R. Civ. P. 23(h); Berry v. Volkswagen Grp. of Am., Inc., 2012 Mo. App. LEXIS 801 (Mo. Ct. App. June 12, 2012). Generally, class counsel recovers attorney's fees and expenses by petitioning the court to award attorney's fees and expenses as part of the settlement or judgment in the case. See, e.g., Fed. R. Civ. P. 23(h); Boeing Co. v. Van Gemert, 444 U.S. 472, 476 (1980); Harris v. Union Electric Co., 766 S.W.2d 80 (Mo. 1989); Berry, 2012 Mo. App. LEXIS 801, at *4.

HFM characterizes the requirement of court approval for expense awards as a barrier that lowered the probability of reimbursement for its class-action expenses.[16] It is true that the attorney's fees and expenses in a class action must be approved by the court (as discussed above). However, it is a basic legal principle that class counsel is entitled to reimbursement of all reasonable out-of-pocket

---

[16]The term "class-action expenses", as used in this opinion, refers to the expenses of pursuing a class-action case, including the expenses of convincing a court to certify the case as a class action. The term "class-action case", as used in this opinion, refers to a case that HFM pursued or hoped to pursue as a certified class action (i.e., the term includes cases that failed to be certified as class actions).

**[*24]** expenses of prosecuting claims and obtaining settlement; the court will generally award such expenses to class counsel.[17]  This principle is known as the common-fund doctrine.  See, e.g., Boeing Co., 444 U.S. at 478-481; In re Cardizem CD Antitrust Litig., 218 F.R.D. 508, 531-532, 535 (E.D. Mich. 2003); In re F&M Distribs., Inc. Sec. Litig., 1999 U.S. Dist. LEXIS 11090, at *20 (E.D. Mich. June 29, 1999).  There is no evidence that HFM would fail to be appointed or approved as class counsel in a class-action case that had been certified.  In fact, the record suggests that HFM was class counsel in all of its class-action cases that were certified.[18]  Therefore, HFM was entitled to reimbursement of its advanced class-action expenses under the common-fund doctrine.  The record shows that this entitlement to reimbursement was borne out in practice.  The parties stipulate that no court has ever denied HFM's request for reimbursement of expenses in a successful class-action case.  (In unsuccessful class-action cases, HFM did not request reimbursement of expenses, as the cases were handled on a contingent-fee

---

[17]Although the court's discretion to award attorney's fees and expenses may be constrained by law (as discussed supra p. 23), HFM has not argued that a law prevented it from recovering its advanced expenses in a successful class-action case.

[18]We discuss the significance of the possibility that HFM would fail to obtain class-action certification infra p. 26.

**[\*25]** basis.)  Given these facts, we find that the requirement of court approval was unlikely to prevent HFM from recovering its expenses in class-action cases.

HFM argues that the expenses it advanced in class-action cases should be deductible because the expenses were incurred before the exact identities of the class members were determined.  As HFM points out, the exact identities of class members are not determined until the judgment is entered (or alternatively, until a settlement is reached).  See, e.g., Fed. R. Civ. P. 23(c)(2)(B), (3), (e); Mo. R. Civ. P. 52.08(c)(2) and (3).  Until that time, HFM argues, there is "no identifiable obligor", i.e., no specific party who is obligated to reimburse the expenses.[19]  However, when it advanced the expenses HFM knew that in a successful class-action case it would be reimbursed by the class members that would be identified in the future.  As explained above, the common-fund doctrine typically allowed HFM to recover its expenses in successful class-action cases.  Thus if a class-action case was successful, HFM would recover its expenses from the members of the class collectively.

---

[19]The identities of the class representatives are known from the beginning of a class-action case, but the class representatives are not liable for reimbursing all of the advanced expenses.  See Rand v. Monsanto Co., 926 F.2d 596 (7th Cir. 1991).

**[*26]** It is possible that there was a lower probability of reimbursement for HFM's class-action expenses because of the chance that HFM would fail to obtain class-action certification. However, on the basis of the record, we find that the possibility that a case would fail to be certified as a class action did not lower the probability of reimbursement for HFM's class-action expenses to the point where it was insignificant.

For the above reasons, advanced expenses in class-action cases do not warrant different treatment from advanced expenses in other contingent-fee cases.

In conclusion, the advanced expenses that HFM deducted should have been treated as loans. HFM was not entitled to deduct these expenses in the year paid. Instead, when a case closed, HFM was entitled to a bad-debt deduction for any unreimbursed expenses. See Canelo v. Commissioner, 53 T.C. at 226 ("[w]hen pending cases are closed without recovery of deferred advances, then deductions for unrecovered and lost advances are allowable").

III.   A Change From Deducting Advanced Expenses to Treating the Expenses as Loans Is a Change in Method of Accounting.

HFM argues that the IRS's treatment of advanced expenses as loans was not a change in method of accounting and that therefore the IRS's section 481

**[\*27]** adjustment--which disallowed HFM's deductions for advanced expenses in years before 2005--was improper.[20] We disagree for the reasons stated below. Section 446(b) provides that if the taxpayer's method of accounting does not clearly reflect income, the taxpayer must use the method that, in the opinion of the IRS, does clearly reflect income. The term "method of accounting" "includes not only the over-all method of accounting of the taxpayer [e.g., the cash method or the accrual method] but also the accounting treatment of any item." 26 C.F.R. sec. 1.446-1(a)(1) (2005).

Section 481(a) allows the IRS to impose, in the year a new method of accounting is first adopted (or imposed by the IRS), "adjustments which are * * *

---

[20]In addition to challenging the sec. 481 adjustment on the grounds that no change in method of accounting occurred, HFM challenges the sec. 446 adjustment--which disallowed HFM's deductions for advanced expenses for 2005-- on the grounds that no change in method of accounting occurred. We infer that HFM's contention is that, because a change in treatment of advanced expenses is not a change in method of accounting, the IRS should not have relied on secs. 446 and 481 to change the treatment of advanced expenses. However, even if the IRS could not change HFM's treatment of advanced expenses for 2005 (the year in issue) under sec. 446 (authorizing the IRS to determine the "method of accounting" that clearly reflects income), it still had authority to do so under sec. 162 (allowing deductions for business expenses, but not for loans). Thus, deciding whether a change in treatment of advanced expenses is a change in method of accounting would affect the advanced expenses only for years before 2005, the treatment of which could only be changed by the IRS through a sec. 481 adjustment. For these reasons, we address only HFM's challenge to the sec. 481 adjustment.

[*28] necessary solely by reason of the change [in method of accounting] in order to prevent amounts from being duplicated or omitted".  The terms "method of accounting" and "change in method of accounting" carry the same meaning as in section 446.  See 26 C.F.R. sec. 1.481-1(a)(1) (2005); 26 C.F.R. sec. 1.446-1T(e)(2)(ii)(a) (2005), 69 Fed. Reg. 8 (Jan. 2, 2004).[21]

Under section 446 (and therefore under section 481, too), a "change in method of accounting" can be "a change in the overall plan of accounting * * * or a change in the treatment of any material item used in * * * [the overall plan of accounting]."[22]  26 C.F.R. sec. 1.446-1T(e)(2)(ii)(a) (2005).  A "material item" is "any item that involves the proper time for the inclusion of the item in income or the taking of a deduction."  Id.  An item involves "the proper time for the inclusion of the item in income or the taking of a deduction" if its tax treatment does not permanently distort the taxpayer's lifetime taxable income (i.e., the taxpayer's cumulative taxable income for all taxable periods of its existence), and instead

---

[21]26 C.F.R. sec. 1.446-1T(e)(2)(ii), 69 Fed. Reg. 8 (Jan. 2, 2004), was effective January 2, 2004.  69 Fed. Reg. 5 (Jan. 2, 2004).  It was superseded by a final regulation, 26 C.F.R. sec. 1.446-1(e)(2)(ii), effective December 28, 2006.  T.D. 9307, 2007-1 C.B. 470, 473.  The temporary regulation and the final regulation are identical in all relevant parts.

[22]An overall plan of accounting is equivalent to an overall method of accounting.  See 26 C.F.R. sec. 1.446-1T(e)(2)(iii), Example (1) (2005), 69 Fed. Reg. 10 (Jan. 2, 2004).

**[\*29]** merely accelerates a deduction or postpones the reporting of income; a change in the treatment of any such item is thus a change in method of accounting.  See Knight-Ridder Newspapers, Inc. v. United States, 743 F.2d 781, 798-799 (11th Cir. 1984); Wayne Bolt & Nut Co. v. Commissioner, 93 T.C. 500, 510 (1989); Primo Pants Co. v. Commissioner, 78 T.C. 705, 722-723 (1982); Schuster's Express, Inc. v. Commissioner, 66 T.C. 588, 595-597 (1976), aff'd without published opinion, 562 F.2d 39 (2d Cir. 1977).  A change in method of accounting does not include "adjustment of any item of income or deduction that does not involve the proper time for the inclusion of the item of income or the taking of a deduction."  26 C.F.R. sec. 1.446-1T(e)(2)(ii)(b) (2005), 69 Fed. Reg. 8 (Jan. 2, 2004).

The IRS concedes that it is not attempting to change HFM's overall method of accounting.  Therefore, the IRS's change in HFM's treatment of advanced expenses can only be a change in method of accounting if it affects a "material item".  To determine whether HFM's advanced expenses qualify as a "material item", we examine whether HFM's tax treatment of advanced expenses permanently distorted its lifetime taxable income.

HFM deducted the expenses when they were paid and included any reimbursements in income when they were received, so the net deduction (in terms

[*30] of lifetime taxable income) was the amount of unreimbursed expenses. If HFM had followed the IRS's method, the net deduction would still have been the amount of unreimbursed expenses. Under the IRS's method, HFM would not have deducted the expenses when they were incurred, but instead, when HFM closed the cases to which the expenses related, it would have claimed a bad-debt deduction for any unreimbursed expenses. HFM's method merely accelerated the deduction of unreimbursed expenses and temporarily inflated the amounts of the deductions; the inflated deductions were then canceled out by HFM's reporting the reimbursed expenses as income.

In cases where the tax treatment of an item involves accelerated deductions that are later offset by income, courts have considered both pieces of the tax treatment in determining whether it distorts lifetime taxable income. See Knight-Ridder Newspapers, Inc., 743 F.2d at 786-787, 799; Johnson v. Commissioner, 108 T.C. 448, 493-496 (1997), aff'd in relevant part, rev'd in part, 184 F.3d 786 (8th Cir. 1999); Firetag v. Commissioner, T.C. Memo. 1999-355, slip op. at 3-6, 13-17, aff'd without published opinion, 232 F.3d 887 (4th Cir. 2000); Rankin v. Commissioner, T.C. Memo. 1996-350, slip op. at 14-19, aff'd, 138 F.3d 1286 (9th Cir. 1998). Considering both pieces of HFM's tax treatment--deduction of advanced expenses and inclusion of reimbursed expenses in income--it is apparent

[*31] that HFM did not permanently distort its lifetime taxable income.[23]  Overall, the amount of expenses deducted (and thus the amount of income taxed) was the same as under the IRS's method of deducting unreimbursed expenses when cases were closed.  Therefore, HFM's dispute with the IRS involves when, not whether, its income should be taxed.

We conclude that the IRS's change in the treatment of HFM's advanced expenses was a change in the treatment of a material item used in HFM's overall plan of accounting, and thus a change in method of accounting.  The IRS's section 481 adjustment was therefore warranted.

_____

[23]HFM argues that the IRS permanently changed HFM's taxable income by disallowing its deductions for advanced expenses for the years in which the expenses were paid.  HFM claims that the possibility of a future bad-debt deduction is a separate, independent event that should not be considered part of the IRS's characterization of the advanced expenses as loans.  HFM cites Pelton & Gunther, P.C. v. Commissioner, T.C. Memo. 1999-339, to support these propositions.  But Pelton & Gunther is distinguishable, among other reasons, because the IRS in that case determined that the item in question (a law firm's advanced expenses) was "not deductible, ab initio."  Id., slip op. at 10.  Here, the IRS is allowing HFM a bad-debt deduction for the year it is determined that the expenses will not be reimbursed.

**[\*32]** IV.   <u>HFM Qualifies for the Reasonable-Cause-and-Good-Faith Exception to the Section 6662(a) Penalty to the Extent Its Understatement Is Attributable to Its Advanced Expenses.  HFM's Exact Penalty Will Be Determined Under Rule 155 Computations</u>.

The IRS determined that HFM is liable for a section 6662(a) penalty for a substantial understatement of income tax.  HFM argues that it is not liable for the penalty because it had reasonable cause and acted in good faith with respect to the tax treatment of its advanced expenses.[24]

Section 6662(a) and (b)(2) imposes a 20% penalty on any part of an underpayment that is attributable to a substantial understatement of income tax.  Generally, an "understatement" is the excess of the tax required to be shown on the return over the tax shown on the return.  Sec. 6662(d)(2)(A).  For corporations (other than an S corporation or a personal holding company), an understatement is substantial if it exceeds the lesser of (1) 10% of the tax required to be shown on the return (or, if greater, $10,000) or (2) $10,000,000.  Sec. 6662(d)(1)(B).  The section 6662(a) penalty does not apply to any part of an underpayment if the taxpayer had reasonable cause for and acted in good faith regarding that part of the underpayment.  Sec. 6664(c)(1).

---

[24]HFM does not argue that the reasonable-basis-and-adequate-disclosure exception applies.  <u>See</u> sec. 6662(d)(2)(B)(ii).

**[\*33]** The IRS has the burden of production for penalties. Sec. 7491(c). This burden is satisfied if the IRS produces "sufficient evidence indicating that it is appropriate to impose the relevant penalty." Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Once the IRS satisfies its burden of production, the taxpayer must prove that the IRS's determination is incorrect; in other words, the taxpayer has the burden of persuasion. Id. at 446-447. And in order to convince the Court that an exception to the penalty is warranted, the taxpayer has not only the burden of persuasion, but also the burden of production. See id. at 446 (stating that the IRS "need not introduce evidence regarding reasonable cause, substantial authority, or similar provisions").

The IRS will have met its burden of production for imposing the section 6662(a) penalty if Rule 155 computations show that HFM had a substantial understatement of income tax. See, e.g., Jarman v. Commissioner, T.C. Memo. 2010-285, slip op. at 13; Prince v. Commissioner, T.C. Memo. 2003-247, slip op. at 13.

We find, however, that HFM acted with reasonable cause and in good faith with respect to its tax treatment of its advanced expenses. The decision as to whether a taxpayer acted with reasonable cause and in good faith depends on all the pertinent facts and circumstances. 26 C.F.R. 1.6664-4(b)(1) (2012). Generally,

[*34] the most important factor is the extent of the taxpayer's efforts to assess its proper tax liability. Id. HFM created an internal classification system that attempted to account for the relative risks of losing its cases. It used this system to determine whether to claim deductions for the advanced expenses. It did not claim deductions for all of the advanced expenses: For example, it capitalized some of the advanced expenses in the net-fee category. The IRS contends that it was unreasonable for HFM to claim a deduction for any of the advanced expenses because HFM had a contractual right of reimbursement against its clients and therefore the deductibility of the advanced expenses was "clearly contradict[ed]" by Merritt v. Commissioner, T.C. Memo. 2003-187. But Merritt is a Memorandum Opinion. It is not binding precedent. Discussions in other opinions suggest that the prospects for reimbursement of advanced expenses are relevant to their deductibility. See, e.g., Burnett v. Commissioner, 356 F.2d at 759 ("[P]etitioner's expenditures constituted advances to his clients which were virtually certain to be repaid and, consequently, were not deductible as business expenses."). We believe that HFM's efforts to categorize its advanced expenses represented a good-faith attempt to determine their deductibility.

We conclude that HFM qualifies for the reasonable-cause-and-good-faith exception to the section 6662(a) penalty to the extent its understatement is

**[\*35]** attributable to its advanced expenses. HFM's exact penalty will be determined under Rule 155 computations.

V.    Conclusion

HFM was not entitled to deduct its advanced expenses as business expenses. The advanced expenses were in the nature of loans to contingent-fee clients, and HFM was entitled only to claim a bad-debt deduction for the unreimbursed expenses of a case after the case had closed. The change in tax treatment of HFM's advanced expenses was a change in method of accounting, and thus the IRS's section 481 adjustment was proper. However, HFM qualifies for the reasonable-cause-and-good-faith exception to the section 6662(a) penalty to the extent its understatement is attributable to its advanced expenses. Its exact section 6662(a) penalty will be determined under Rule 155 computations.

We have considered all arguments, and contentions not addressed are meritless, irrelevant, or moot.

To reflect the foregoing,

Decision will be entered under Rule 155.