**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2013-100

UNITED STATES TAX COURT

GARY W. ANDERSEN AND LINDA C. ANDERSEN, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24326-12S.              Filed December 9, 2013.

Gary W. Andersen and Linda C. Andersen, pro sese.

Craig A. Ashford and Scott Lewis (student), for respondent.

SUMMARY OPINION

ARMEN, Special Trial Judge:  This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency in petitioners' 2010 Federal income tax of $7,907 and an accuracy-related penalty of $1,223 pursuant to section 6662(a) and (d) on the basis of a substantial understatement of income tax.

After a concession by petitioners,[2] the sole issue remaining for decision is whether they are liable for the accuracy-related penalty.  We hold that they are not.

## Background

Some of the facts have been stipulated, and they are so found.  We incorporate by reference the parties' stipulation of facts and accompanying exhibits.

Petitioners resided in Utah at the time that the petition was filed.

Petitioners have been married for 47 years and have filed joint Federal income tax returns throughout their married life.  Before their marriage, petitioners filed separate returns as single individuals.  Overall, petitioners have a 50-year

---

[1] Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code in effect for the year in issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Petitioners concede that they are liable for the deficiency in tax.

history of filing timely returns, all of which have been accepted as filed by the Internal Revenue Service with the sole exception of their return for the year in issue.

In 2010 Mr. Andersen was employed by Levelor Kirsch, a subsidiary of Newell Window Furnishings, Inc. He received a fixed salary with a potential for bonuses, creating the possibility for his income to fluctuate from year to year.

In 2010 Mrs. Andersen was employed as a registered nurse on a part-time basis. She typically worked three to four shifts per month but could be (and was) called for additional shifts as needed. For the year she earned $28,446. Although Mrs. Andersen had intended to retire by 2010, she decided to work for another year or so in order to increase her future Social Security benefits.

Petitioners regard their tax situation as fairly complex, as they receive income from multiple sources, including two subchapter S corporations that lease farmland out of State. Petitioners worry about their ability to prepare accurate tax returns; accordingly, for many years, including 2010, petitioners have hired a certified public accountant (C.P.A.) to assist them in the preparation of their returns.

Petitioners are aware of the importance of recordkeeping, and for many years they have maintained a system for keeping track of documents that will be

needed to prepare their returns. Thus, when petitioners received in the mail a tax document such as a Form W-2, Wage and Tax Statement, Form 1098, Mortgage Interest Statement, Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., or Schedule K-1, Beneficiary's Share of Income, Deductions, Credits, etc., they would briefly review it and then place it in a dedicated tax file, along with other tax-relevant documents that they collected throughout the year. In February or March petitioners would meet with their C.P.A. and furnish him with their tax file. Once the return had been prepared, petitioners would again meet with the C.P.A. to review the return.

Over the course of her career, Mrs. Andersen was accustomed to receiving a Form W-2 in paper form. However, for 2010, the payroll agent for her employer discontinued issuing Forms W-2 in paper form, opting instead for the first time to make them available electronically on the Internet. Mrs. Andersen did not receive notice from either her employer or her employer's payroll agent about this change, nor did she receive a paper copy of her Form W-2 from her employer or her employer's payroll agent.

In collecting and organizing their tax documents incident to the preparation of their 2010 return, petitioners did not realize that they lacked a Form W-2 for Mrs. Andersen's employment.

Petitioners retained Curtis Trader, a C.P.A., to prepare their 2010 Federal income tax return. Mr. Trader had prepared petitioners' tax returns since 2005, and they had confidence in him. Mr. Trader held a master of accountancy in tax degree from Brigham Young University, and he had been practicing as an accountant for nearly 20 years and as a C.P.A. for most of that period.[3]

In or around February 2011 petitioners furnished Mr. Trader with all of their tax documents except for a Form W-2 for Mrs. Andersen. Mr. Trader had previously spoken with Mrs. Andersen about her retirement plans, and he was under the impression that she had already retired, a matter that he had recorded in his client notes. His impression was later strengthened by the fact that among petitioners' tax documents was a Form 1099-R, reporting a modest distribution from a nonemployer payor. Mr. Trader was not therefore surprised by the absence of a Form W-2, and he did not inquire about the matter. As a result, Mr. Trader

---

[3] At the time of trial, Mr. Trader was also chair of the Utah Tax Review Committee, a position to which he had been appointed by the Governor of Utah.

did not include Mrs. Andersen's wage income on line 7 of petitioners' return, nor did he include her tax withholding as a credit on line 61.

As was customary, Mr. Trader met with petitioners to review the 2010 tax return before it was signed and filed. As part of this process, petitioners' 2010 return was compared with their 2009 return to check for any major deviations in income or apparent discrepancies. The adjusted gross income on each of these returns was within $1,000 of the other, and there were no anomalies in items of income or otherwise. As a consequence, neither Mr. Trader nor petitioners noticed the absence of either Mrs. Andersen's wage income or her tax withholding on the 2010 return.

Petitioners signed and timely filed the 2010 return. On it, they reported wages of $87,631 and total income (also adjusted gross income) of $153,225. After reducing total tax due of $21,372 by withholding, estimated tax payments, and a making work pay credit, they claimed a modest overpayment, which they applied to their 2011 estimated tax.

In September 2012 respondent issued petitioners a notice of deficiency, determining a deficiency of $7,907 attributable to Mrs. Andersen's unreported wages. In the notice respondent also determined an accuracy-related penalty under section 6662(a) on the basis of a substantial understatement of income tax.

On the day that they received the notice of deficiency, petitioners, perplexed that their return should be questioned by the Internal Revenue Service, telephoned Mr. Trader and faxed him the notice. Mr. Trader promptly reviewed the notice, confirmed with petitioners that Mrs. Andersen had in fact received wages in 2010, and explained to them that their return had failed to report those wages. At that point, within one week of receiving the notice of deficiency, petitioners paid in full the deficiency and the interest thereon. Thereafter, petitioners timely filed a petition for redetermination with this Court, challenging only the accuracy-related penalty.

## Discussion

Section 6662(a) and (b)(2) imposes an accuracy-related penalty equal to 20% of the amount of any underpayment of tax that is attributable to any substantial understatement of income tax. By definition, an understatement is the excess of the tax required to be shown on the tax return over the tax actually shown on the return. Sec. 6662(d)(2)(A). An understatement of income tax is "substantial" if it exceeds the greater of $5,000 or 10% of the tax required to be shown on the return. Sec. 6662(d)(1)(A).

With respect to a taxpayer's liability for any penalty, section 7491(c) places on the Commissioner the burden of production, thereby requiring the

Commissioner to come forward with sufficient evidence indicating that it is appropriate to impose the penalty. Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). Once the Commissioner meets his burden of production, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

In the instant case respondent determined the accuracy-related penalty on the basis of a substantial understatement of income tax. See sec. 6662(d). Here the understatement of $7,907, which is attributable to the omission from income of Mrs. Andersen's wages, exceeds $5,000, which amount is greater than 10% of the tax required to be shown on petitioners' return. Thus, respondent has satisfied his burden of production under section 7491(c). As a result, petitioners now bear the burden to show that they should not be liable for the penalty. See Higbee v. Commissioner, 116 T.C. at 446-447.

Section 6664(c)(1) provides an exception to the imposition of the accuracy-related penalty with respect to any portion of an underpayment if the taxpayer establishes that there was reasonable cause for such portion, and the taxpayer acted in good faith with respect to such portion. The decision as to whether the taxpayer acted with reasonable cause and in good faith is made on a case-by-case

basis, taking into account the pertinent facts and circumstances, including the taxpayer's knowledge, education, and experience, as well as the taxpayer's reliance on professional advice. Thomas v. Commissioner, T.C. Memo. 2013-60; sec. 1.6664-4(b)(1), Income Tax Regs. Generally, the most important factor is the extent of the taxpayer's effort to assess his or her proper tax liability. Humphrey, Farrington & McClain, P.C. v. Commissioner, T.C. Memo. 2013-23; sec. 1.6664-4(b)(1), Income Tax Regs.

Admittedly, this is an exceptionally close case. However, after weighing all the evidence, and in particular the testimony of the witnesses, we think the balance shifts in petitioners' favor.

At trial both Mr. Andersen and Mrs. Andersen testified. We found their testimony to be straightforward and fully credible. They readily admitted that they had made a mistake. When crossed-examined by respondent's counsel, they were not defensive or argumentative, but rather direct and forthright. In short, petitioners struck us as trustworthy individuals who play by the rules and who take their Federal tax responsibilities very seriously. Apart from our impression of their demeanor, this is demonstrated by the fact that petitioners have a 50-year history of filing timely returns, all of which have been accepted as filed by the

Internal Revenue Service with the sole exception of their return for the year in issue.

That petitioners acted with reasonable cause and in good faith is also demonstrated by the fact that for many years petitioners have hired a C.P.A. to prepare their returns. Although petitioners regard their tax situation as too complex to prepare accurate returns themselves, they actively participate in the return preparation process by maintaining a system to keep track of relevant tax records and by reviewing their completed returns with their C.P.A.

Petitioners' failure to notice the absence of a Form W-2 for Mrs. Andersen was an oversight on their part. However, the oversight was at least partially understandable given both the number of petitioners' tax documents and the fact that Mrs. Andersen never received from either her employer or her employer's payroll agent a paper copy of a Form W-2, something that she had previously received throughout her career. Nor had Mrs. Andersen received notification from either of those parties that the payroll agent had discontinued issuing Forms W-2 in paper form in favor of making electronic copies available on the Internet.

Petitioners also failed to notice, when they reviewed their return with Mr. Trader, that Mrs. Andersen's wages were not included on line 7. But when, as part of the review process, petitioners and Mr. Trader compared the 2010 return with

the 2009 return, the parties noted the similarity of the amounts of income and the absence of any anomaly, thereby suggesting that no error had occurred. Indeed, the difference between the amounts of income reported on petitioners' 2010 and 2009 returns was less than $1,000, or two-thirds of one percent of their 2009 income, a difference that would not ordinarily give rise to any suspicion that income had not been fully reported.

Mention should also be made of Mr. Trader, a highly credentialed tax professional. Although petitioners do not seek to shift responsibility to him, as they readily admit that they inadvertently failed to furnish him with a Form W-2 for Mrs. Andersen's wages, we are convinced that if Mr. Trader had not proceeded on a mistaken impression about Mrs. Andersen's retirement, the income would never have gone missing from the return.[4]

Finally, indicative of petitioners' good faith is the fact that on the very day that they received the notice of deficiency they contacted Mr. Trader and faxed him a copy for an explanation of why there should be any deficiency in their tax. Then, as soon as petitioners learned that their return had omitted Mrs. Andersen's

---

[4] At trial we found Mr. Trader to be forthright and credible. He readily admitted that he knew that Mrs. Andersen had been employed in the past but assumed that she had retired on the basis of statements of intent she made before petitioners furnished him with their 2010 tax file.

wages, and within a week of receiving the notice, petitioners paid the deficiency in full, together with applicable interest. To us, these actions bespeak petitioners' commitment to fulfilling their tax obligations and their good faith.

## Conclusion

Clearly, petitioners made a mistake. But we think it was an honest mistake and not of a type that should justify the imposition of the accuracy-related penalty. In short, we think that petitioners' diligent efforts to keep track of their tax information, hiring a C.P.A. to prepare their tax return, reviewing their return with the C.P.A. when it was completed, and prompt payment of the deficiency upon receipt of the notice of deficiency, together with the other facts and circumstances discussed above, represent a good-faith attempt to assess their proper tax liability. Accordingly, we hold that petitioners have carried their burden with respect to the reasonable cause and good faith exception under section 6664(c)(1) and that petitioners are therefore not liable for the accuracy-related penalty under section 6662(a). See Humphrey, Farrington & McClain, P.C. v. Commissioner, T.C. Memo. 2013-23; sec. 1.6664-4(b)(1), Income Tax Regs. In so holding we have considered all of the arguments advanced by respondent, and, to the extent not expressly addressed, we conclude that those arguments do not support a result contrary to that reached herein.

In order to give effect to the foregoing,

<u>Decision will be entered for respondent as to the deficiency in tax and for petitioners as to the accuracy-related penalty</u>.